## Case No. 15,792.
UNITED STATES v. MITCHELL et al.

[3 Wash. C. C. 95.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.

EMBARGO—DEBT ON BOND—PERILS OF THE SEA—
CERTIFICATE—LOG-BOOK—SEAWORTHINESS.

1. Debt on a bond given under the embargo laws. The question on the evidence was, whether the defendants were prevented by perils of the sea, from performing the condition of the bond. It was alleged, that the vessel was, by perils of the sea, driven into St. Thomas; and that when there the authorities of the island obliged the master to sell her cargo.

1 [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2. The certificate of the governor of St. Thomas (the signature being proved), without a seal, given at the time the captain petitioned for leave to depart with his cargo, that such petition was refused; is an official act by a person, who, it is probable, would not give a deposition, and is different from evidence of matters not official, and may be read in evidence.

3. The log-book was allowed to be given in evidence, in proof that the bills of lading had been made out from it; the witness declaring he was perfectly sure it was the log-book kept on the voyage, although he did not recollect having seen the mate make regular entries in it; and also, that every exertion had been made, to procure the attendance and testimony of the mate.

4. The rule, in U. S. v. Dixey [Case No. 14,967], condemned by the court. If the vessel was not seaworthy, the injury done to her or to her voyage by perils of the sea, will not excuse the defendants, who should clear themselves from all imputations of this kind; but the rule as to seaworthiness, ought not to be more strict in such cases as this, than in cases of insurance. It is sufficient, if the vessel were seaworthy for the voyage upon which she was destined; and the want of this, must be proved by him who affirms the fact, if sufficient causes for her disability, such as storms, &c., are proved. Aliter, if no such cause appears.

Debt on an embargo bond; and the question on the evidence was, whether the defendants were prevented by perils of the sea, or other unavoidable accidents, from landing their cargo at some port in the United States? The voyage was from Philadelphia to Charleston and Savannah. The night of the day after the pilot left her, she was exposed to a violent storm, which continued, with some intermissions, for some days. She suffered greatly in her masts and rigging, insomuch, that she was compelled to keep before the wind; and the winds continued so adverse, that it was stated by a witness, that it was not possible to make a port in the United States. The log-book strongly supported this statement. She went into St. Thomas, where she was unladen by order of the judge, upon a report of surveyors; and was prevented, by a general prohibition of the government of the island, from carrying away the cargo, which consisted of provisions. It appeared, by a certificate of the governor of the island, whose signature was proved, but to which there was no seal, which certificate was given at the time the petition of the captain was made to him, for leave to take away the cargo, that it was refused. This certificate was objected to.

BY THE COURT. The certificate is of an official act, given at the time, by which it appears, that the captain had petitioned for leave to take away the cargo, which the governor refused. We know no way by which that fact could be better proved, than by this certificate, unless the deposition of the governor had been taken, which it is not to be supposed he would have consented to give. This is very different from evidence of matters not official, in which latter case, such a certificate could not be admitted.

The log-book, which was not admitted at the former trial [Case No. 15,791], was now admitted upon this additional evidence, that in relation to the cargo taken on board, the bills for landing at St. Thomas, were made out from this book, which the witness declared he was perfectly sure was the log-book kept on that voyage, though he did not recollect seeing the mate make entries regularly in it; and upon this further proof, that advertisements had been inserted in two papers in this city, shortly after the last trial, requesting information where the mate was, as by calling at a particular place, he would hear something to his advantage. This book is now better identified, than it was at the last trial, and due diligence has been used to obtain better evidence than that of the mate himself, without success.

WASHINGTON, Circuit Justice (charging jury). Something has been said, about the want of seaworthiness in this vessel. If sufficient proof of her want of seaworthiness for the intended voyage, has been given, to the satisfaction of the jury, it is fatal to the defence; because, the defendants, to entitle themselves to the excuse they set up, should clear themselves from all blame in respect to the accident which prevented their complying with the condition of the bond. But, in respect to seaworthiness, the rule, in a case of forfeiture, must not be more rigid than is laid down in actions on policies of insurance; and that is, if the vessel, without any apparent and sufficient cause, begins to leak, and to show herself unfit to perform the voyage, the presumption is that she was not seaworthy when the voyage commenced; and the person who affirms she was so, must prove it by sufficient evidence. But, if a sufficient cause for her leaking is proved, as the existence of severe weather, as in this case; the burthen of proof is thrown upon the party who affirms that she was not seaworthy when the voyage commenced. Whether any such evidence has been given by the United States, you are to decide. The question is, not whether she was sufficiently staunch and strong, and found for any voyage, but for this voyage? Another argument used by the district attorney, was, that when the accidents happened, which compelled her to go before the wind, she ought to have returned to Philadelphia. If at this time it was apparent that she could not make a southern port, and that she could get into a more northern port, she certainly was bound to do so. This was formerly determined in a case in this court; because, in that case, the vessel not being able to lay to the wind, so as to make a southern port, on account of the want of ballast, and having performed but a small part of her voyage, it was decided, that the master ought to have returned, and gone somewhere to supply his original omission. But in this case, there was no reason to suppose, that this vessel could not make a southern port, in consequence of the injury to her masts, nor does it appear, that she could not have done it, had the winds favoured. She had performed much the greatest part of her voyage, and was driven from the coast by westerly winds; so at least is the evidence. The law, in such a case, did not impose on the defendants the necessity of returning, so long as they could fairly hope, with favourable winds, to reach the port of their destination. As to the facts of the case, the court will only say, that if you credit the evidence given of them, the defendants have fully brought themselves within the exception provided in their favour.

Verdict for defendants.